AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District: Southern District of Ohio | |
|---|---|---|
| Name (under which you were convicted): <br><br> Jeremiah Ulysses Jones | | Docket or Case No.: <br> 2018 CR 0625 |
| Place of Confinement : <br><br> Southern Ohio Correctional Facility | Prisoner No.: <br><br> A763417 | |
| Petitioner (include the name under which you were convicted) <br><br> Jeremiah Ulysses Jones      v. | Respondent (authorized person having custody of petitioner) <br><br> Cynthia Davis, Warden | |
| The Attorney General of the State of: | | |

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Trumbull County Court of Common Pleas. 161 High St., NW, Warren, Ohio 44481

   (b) Criminal docket or case number (if you know):  2018 CR 0625

2. (a) Date of the judgment of conviction (if you know):  06/17/2019

   (b) Date of sentencing:  06/17/2019

3. Length of sentence:  6 years aggregate

4. In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☑ No

5. Identify all crimes of which you were convicted and sentenced in this case:  Aggravated robbery with gun specification.

6. (a) What was your plea? (Check one)

   ☐ (1) Not guilty     ☐ (3) Nolo contendere (no contest)

   ☑ (2) Guilty       ☐ (4) Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

   ❐ Jury  ❐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

   ❐ Yes  ☑ No

8. Did you appeal from the judgment of conviction?

   ❐ Yes  ☑ No

9. If you did appeal, answer the following:

(a) Name of court:

(b) Docket or case number (if you know):

(c) Result:

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised:

_____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?  ❐ Yes ☑ No

  If yes, answer the following:

  (1) Name of court:

  (2) Docket or case number (if you know):

  (3) Result:



AO 241 (Rev. 09/17)

(4) Date of result (if you know):

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?      ☐ Yes      ☑ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?      ☑ Yes      ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:      Trumbull County Court of Common Pleas

(2) Docket or case number (if you know):      2018 CR 0625

(3) Date of filing (if you know):      06/07/2023

(4) Nature of the proceeding:      Motion to withdraw guilty plea

(5) Grounds raised:    Petitioner incompetent to enter plea.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes      ☑ No

(7) Result:    Motion denied.

AO 241 (Rev. 09/17)

       (8) Date of result (if you know):     06/12/2023

  (b) If you filed any second petition, application, or motion, give the same information:

       (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

       (4) Nature of the proceeding:

       (5) Grounds raised:

       (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

       ❒ Yes    ❒ No

       (7) Result:

       (8) Date of result (if you know):

  (c) If you filed any third petition, application, or motion, give the same information:

       (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

       (4) Nature of the proceeding:

       (5) Grounds raised:

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏ Yes ❏ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☑ Yes ❏ No

(2) Second petition: ❏ Yes ❏ No

(3) Third petition: ❏ Yes ❏ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Petitioner did make a knowing and voluntary plea since he was not competent to do so.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Exhibit A attached.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241 (Rev. 09/17)

(c)     **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ❐ No

    (2) If you did not raise this issue in your direct appeal, explain why:

    _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ❐ Yes    ❐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion or petition?    ❐ Yes    ❐ No

    (4) Did you appeal from the denial of your motion or petition?    ❐ Yes    ❐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ❐ Yes    ❐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

       (1) If you appealed from the judgment of conviction, did you raise this issue?    ❐ Yes    ❐ No

       (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

       (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          ❐ Yes    ❐ No

       (2) If your answer to Question (d)(1) is "Yes," state:

       Type of motion or petition:

       Name and location of the court where the motion or petition was filed:

       Docket or case number (if you know):

AO 241 (Rev. 09/17)

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | | | |
|---|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ❑ | Yes | ❑ | No |
| (4) Did you appeal from the denial of your motion or petition? | ❑ | Yes | ❑ | No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ❑ | Yes | ❑ | No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❐  Yes          ❐  No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          ❐  Yes          ❐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                          ❐  Yes          ❐  No

(4) Did you appeal from the denial of your motion or petition?                      ❐  Yes          ❐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❐  Yes          ❐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings**:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | | | |
|---|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ❐ | Yes | ❐ | No |
| (4) Did you appeal from the denial of your motion or petition? | ❐ | Yes | ❐ | No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ❐ | Yes | ❐ | No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes    ☐  No

           If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

           No.

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☐   Yes   ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☐   Yes   ☑ No

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241 (Rev. 09/17)

16. Give the name and address, if you know. of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:     Unknown

(b) At arraignment and plea:     Robert Rohrbaugh II, address unknown

(c) At trial:

(d) At sentencing:     Robert Rohrbough II

(e) On appeal:

(f) In any post-conviction proceeding:     Michael A. Partlow, PO Box 1562, Stow, OH 44224

(g) On appeal from any ruling against you in a post-conviction proceeding:     Michael A. Partlow

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     ☑ Yes     ☐ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

Same court-different case. Habeas relief being sought shortly.

(b) Give the date the other sentence was imposed:     07/22/2019

(c) Give the length of the other sentence:     12 years aggregate.

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?     ☑ Yes     ☐ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

One year did not start to run until 1 year after exhaustion of stae remedies regarding Motion to Withdraw guilty plea.

AO 241 (Rev. 09/17)



* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

      (1)      A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

            (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

            (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

            (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

            (D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   vacate Petitioners guilty plea.

or any other relief to which petitioner may be entitled.

Michael A. Partlow (0023712)
PO Box 1562
Stow OH 44228
330. 400. 2290

                        Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on               (month, date, year).

Executed (signed) on            (date).

                                   Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

Petitioner is incarcerated in SOCF, cannot read or write and has an IQ in the low 50's.

## EXHIBIT A-GROUNDS FOR HABEAS PETITION

This is a proceeding based upon the Trial Courts denial of Petitioner's Motion to withdraw his prior guilty plea. The Trial Court denied such, essentially without comment. In the within case although sentence has been imposed, it is submitted that a manifest injustice took place which merits the setting aside of the judgment of Petitioner's convictions and merits permitting Petitioner to withdraw his pleas.

For cause, Petitioner submits that he was not in fact guilty of charges for which he was convicted and he was not properly represented by counsel. He was further not properly advised of his constitutional rights and he did not knowingly and intentionally waive his constitutional rights prior to entering his pleas.

The record in this matter is quite clear that Petitioner's original trial counsel sought a finding that Petitioner was not competent to stand trial. In that regard, two separate forensic examinations of Petitioner occurred. First, the Forensic Psychiatric Center of North East Ohio conducted an evaluation of Petitioner. (See attached). While the evaluator eventually determined that Petitioner was competent to stand trial, a variety of troubling factual findings were made in the process of that evaluation, to wit: (1) Petitioner cannot read or write, beyond signing his name; (2) Petitioner was a very young man and had always been in special education classes throughout his educational career; (3) there was "no doubt" that Petitioner suffered from an intellectual disability and several tests showed Petitioner's IQ to be in an extremely low range of 56; (4) Petitioner was unsure of the role of a judge in a trial proceeding; and (5) it was very difficult to gauge a level of Petitioner's concentration. This first evaluation was based upon a TOMM test that was administered indicating some level of malingering by Petitioner **as to memory** and it was then concluded that Petitioner was

competent. A second evaluation was ordered.

The second evaluation was conducted by the AVCO Behavioral Health and essentially accepted the findings of the first evaluation. The second evaluation was based entirely upon an interview with Petitioner which occurred on one occasion and lasted for approximately 45 minutes.

After these evaluations were stipulated to and submitted to the Trial Court, the Trial Court found Petitioner to be competent to stand trial. Subsequently, Petitioner withdrew his prior not guilty pleas and entered guilty pleas.

*Forensic Psychiatric Center of Northeast Ohio, Inc.*

5212 Mahoning Ave., Suite 317, Youngstown, Ohio 44515-1857
Phone: 330-792-1918 Fax: 330-792-7712 TDD: 330-792-0098

Gerald L. Heinbaugh, MBA
Executive Director

Vincent F. Arduin, LISW
Thomas G. Gazley, Ph.D.

Jont Ex. 1
1-16-19
KJW

## COMPETENCY EVALUATION

**NAME:** Jeremiah Jones
**CLIENT NO:** 565703
**CURRENT RESIDENCE:**
Trumbull County Jail
Warren, OH

**AGE:** 19
**SEX:** Male
**RACE:** African American
**MARITAL STATUS:** Single
**EDUCATION:** High School Graduate,
           Special Education

**PHONE:** None
**D.O.B.:** 6/30/1999

**INCOME SOURCE:** Social Security Disability
**DATE OF REPORT:** 10/3/2018

Dear Judge McKay:

Jeremiah Jones is a 19 year old male referred to the Forensic Psychiatric Center of Northeast Ohio, Inc. for evaluation pursuant to O.R.C. 2945.371(G)(3) Competency to Stand Trial. Mr. Jones has been charged in Trumbull County Court of Common Pleas with one count of Aggravated Robbery with Firearm Secification in violation of O.R.C. 2911.01(A)(1) and (C) and 2941.145, first degree felony, and one count of Aggravated Robbery with Firearm Specification in violation of O.R.C. 2911.01(A)(3) and (C) and 2941.145 first degree felony. in Trumbull County Court of Common Pleas Case No. 18 CR 625 with one count of Aggravated Robbery with Firearm Specification (F1) in violation of O.R.C. 2911.01(A)(1) and (C) and 2941.145. Mr. Jones is currently incarcerated in the Trumbull County Jail.

Prior to beginning this evaluation, the limits to confidentiality inherent in a court ordered evaluation were carefully explained to Mr. Jones. He was made aware a report would be prepared and presented to the court. Mr. Jones was provided the Forensic Center's *Client Rights and Policies* form for his own use. The Forensic Center's *Informed Participation* document was explained to Mr. Jones. He stated he understood the contents as explained. Mr. Jones reported he does not read, and as a result he did not read the *Informed Participation* document. I did not ask him to sign it. Mr. Jones stated however he understood that a report would be prepared for the court and that I was not his treating doctor. He agreed to participate.

### SOURCES OF INFORMATION:

1. Review of Order for Forensic Examination in Trumbull County Court of Common Pleas Case No. 18 CR 625.

A contract agency of the Ashtabula County, Columbiana County, Mahoning County and Trumbull County Mental Health and Recovery Services Boards, the United States Probation Office, Northern District of Ohio and the Federal Bureau of Prisons

Certified by the Ohio Department of Mental Health and Addiction Services - Bureau of Criminal Justice and Forensic Services and the Ohio Department of Rehabilitation and Correction

## SOURCES OF INFORMATION (Continued):

2. Review of the Indictment in the alleged instant offense.

3. Interview with Ms. Deborah Croff, Jeremiah's biological mother at the Forensic Center office on 8/3/2018.

4. Interview with Jeremiah Jones at the Trumbull County Jail on 7/24/2018, approximately 40 minutes.

5. Administration and interpretation of the Wechsler Adult Intelligence Scale-IV Verbal Comprehension Index Subtests.

6. Collateral telephone contact with Ms. Deborah Croff on multiple occasions.

7. Review of Warren City Police Department Incident Report and Narrative Supplement for incident# 17-27384.

8. Review of Warren City Schools Evaluation Team Report for Jeremiah Jones dated 2/6/2014.

9. Review of Social Security Administration Statement of Disability Benefit dated 2/1/2018.

10. Second interview with Mr. Jeremiah Jones at the Trumbull County Jail on 9/13/2018, approximately 45 minutes.

11. Administration and interpretation of the Test of Memory Malingering (TOMM) on 9/20/2018.

12. Attempted administration of the CAST*MR.

## RELEVANT BACKGROUND INFORMATION:

Mr. Jones himself was a rather poor reporter of information. Our first interview was on July 24, 2018. On that date, Mr. Jones stated he didn't think he knew his birthday but thought perhaps he was born in June. He couldn't be sure of the month, day, or year. He did know he was 19 years old. He stated he didn't know his address although he knew he lived with his mother, he was able to state his mother's name was Debbie Croff but he didn't know how to spell her name. He reported his mother's phone number because he had it written on a piece of paper carried in his pocket.

2

## RELEVANT BACKGROUND INFORMATION (Continued):

Mr. Jones stated he didn't know how many brothers he might have, he stated he had one sister who is 14. He didn't know the name of his father. He was unable to report where he grew up and couldn't remember where he went to school.

Mr. Jones stated he was passed through school, "I finished school, but you'd have to look on my school record to know where it was."

Mr. Jones denied taking any medication. He reported no physical problems.

I had the opportunity to meet with Jeremiah's mother, Ms. Deborah Croff on 8/3/2018. She reported Jeremiah's birthday was 6/30/1999 and confirmed that he was 19 years old. She stated he gets Social Security and she is his payee. He's never had a legal guardian. She states "he never needed a guardian because I've always been around him." Ms. Croff stated she has 11 children, the oldest is 34 and the youngest is 13. She reported Jeremiah lived at 1637 Arlington Ave., NW in Warren, she stated she goes to his house to care for him there.

Ms. Croff stated Jeremiah had a juvenile court record which was "dropped because it was dismissed." She reported he had developmental delays, he was born one month premature, and has always been in special education classes. She reported he does not read. She states she doesn't know what medication he takes, though reports he was seeing a psychiatrist in Boardman. She does not know who that was.

I met with Mr. Jones again on 9/13/2018. On that date, he clearly remembered his birthdate as 6/30/1999. Mr. Jones was much more verbal on this interview than he was initially. He responded to questions with significantly more detail. He was able to state at one point in his history he and his mother were homeless, there was a fire in the home, Mr. Jones was staying at an aunt's house in Cleveland. Mr. Jones was able on interview 9/13/2018 to describe circumstances surrounding the alleged offenses. He used language such as "we were moving because we got evicted out of the apartment because we were short on rent." He understood how DNA could be used as evidence, he was talking about how clothes were allegedly found and reported "it doesn't matter if they took my DNA or not, they were my clothes so my DNA is going to be on them." This was after he asked about "what's a DNA swab?" He also initially reported not knowing what testify means. Later in the interview when asking about a witness, he stated "it's stuff they say in court they stand up to testify." He went on to state how a lot of people said they would testify for him in court. He stated at times he would be employed by his sister who paid him to cut grass and do things for her because she owns houses. He also was able to report today that he had multiple siblings, and that he had a younger brother, a juvenile co-defendant in the case.

I had the opportunity to review the Evaluation Team Report from the Warren City Schools. There is no doubt, based upon formal testing that Mr. Jones has an

3

## RELEVANT BACKGROUND INFORMATION (Continued):

intellectual disability. Mr. Jones' historical testing data dated 2/23/2011 indicates a full-scale IQ of 56 which is extremely low, academic achievement is all very low. Adaptive behavior composite is also low. This information would quality Mr. Jones for a diagnosis of intellectual disability within the mild range. He never however received any services from the Trumbull County Board of Developmental Disabilities. Previous evaluation with the Wechsler Intelligence Scale for Children-Fourth Edition was dated March of 2008. Again his full-scale IQ was 54, academic achievement was all very low, and adaptive behavior was equally low. Two-thousand-five testing revealed intelligence scores again within the mild mentally retarded range, with achievement consistent with intellectual functioning. The February 2014 evaluation stated that Jeremiah's cognitive ability has consistently been measured in the extremely low range. The 2011 evaluation noted that Jeremiah was displaying behavior that was adversely affecting other children in the classroom, he was exhibiting a high number of aggressive and rule breaking behaviors, as well as being distracted. Jeremiah has consistently qualified for special education services of the category of cognitive or intellectual disability.

In 2014, Jeremiah was due for a three year re-evaluation. Unfortunately his mother refused to sign consent for testing, and no new or updated testing could be done. The record review was done instead.

Review of the Social Security Administration Disability Description states Jeremiah Jones receives disability benefits for a primary diagnosis of Mental Retardation and secondary diagnosis which is Personality Disorder. This note was dated 2/1/2018.

Mr. Jones reports he smoked marijuana daily. He stated "my friends would have it." He denied any alcohol use. When asked about potential medical problems he stated he was in the hospital once because "I thought I had the flu." He reports no history of psychiatric hospitalization.

## MENTAL STATUS EXAM:

I had the opportunity to interview Mr. Jeremiah Jones on two separate occasions. Mr. Jones' verbal presentation was significantly different from one interview to the next. The initial interview took place on 7/24/2018. On that date, Mr. Jones had an adequate appearance for a jail setting. He sports a slight beard, he is of average height, he has a husky build. He has tattoos on his arms. When Mr. Jones spoke his speech was generally clear and coherent. There was no evidence of thought disorder in form or in content. He was quiet, however his speech was of normal rate.

There were no reported symptoms of mood disorder, no symptoms of depression, and no symptoms of perceptual disorder in the form of hallucinations. He did not express delusional thought content.

4

## MENTAL STATUS EXAM (Continued):

Mr. Jones was cooperative in that he was in good behavioral control. He was in no manner aggressive, hostile, or threatening.

Mr. Jones responded with limited memory, he could not remember his birthdate, his address, or how to spell his mother's name. He didn't know where he went to school, he didn't know any medications, and he didn't know where he grew up. He paused for lengthy periods prior to providing any answer even if it was "I don't know." Mr. Jones was oriented to person, place, in that he knew he was in jail, however he did not know the date, he did not know why he was in jail other than "they said someone got robbed, I don't know who, I was arrested because of rumors." Attention and concentration were difficult to gauge given his very poor memory function. There was no report of suicide ideation, gesture, or attempt. Verbal intelligence estimated from language and vocabulary use alone was likely in the very low range, mild intellectually disability range.

I attempted to administer the Wechsler Adult Intelligence Scale-IV Verbal Comprehension Index Subtests. This was on 7/24/2018. Mr. Jones was either unwilling or unable to provide accurate responses to any of the verbal subtest items, even the most simplistic. For example, when asked to say what was the same about a fork and a spoon he did not know. He didn't know what was the same about a horse and a tiger because "I've never seen one." He didn't know what was the same about carrots and broccoli because "I don't know what that is." When asked to define what is an airplane he stated he didn't know. He stated he didn't know what a basket was. He didn't know what was an apple, and he didn't know what was a book. I pointed to a book and asked what that was and he said "I don't know." I abandoned the administration.

I also attempted to interview the CAST*MR, a multiple choice format test for evaluating competency in persons with intellectual disabilities. Once again, even the most simplistic sample items, Mr. Jones could not answer. For example, when given the statement "what does a fireman do, he could not pick the correct answer "put out fires". He could not answer the statement "what does a doctor do", with the correct answer "treats sick people".

I interviewed Mr. Jones again on 9/13/2018. Mr. Jones demonstrated significantly better memory, significantly better conversational skills, and significantly improved ability to respond in a rational and relevant manner to questions asked. For example, on 9/13/2018, he easily recalled his birthdate, he knew he was in jail, he knew the alleged offenses were supposed to have happened in 2017. He was able to report circumstances surrounding the alleged offenses as he perceived them. He was able to describe some historical background information such as being homeless, being at his aunt's house in Cleveland and there being a fire at their house. He knew he was in Warren, Ohio, however he had difficulty repeating three objects both immediately and after several minutes.

5

## MENTAL STATUS EXAM (Continued):

He was able to use vocabulary words that were atypical for a person with intellectual disability. For example he described being "evicted" from his apartment because he was "short on rent". He understood DNA as potential evidence. He described getting a "reaction" to eating dairy products. He knew he had gone to school in Girard. He understood legal terms such as describing getting "indicted for a charge". He knew the difference between a municipal court and a common pleas court. He talked about charges being "bound over to common pleas." He talked about "discovery". He knew about "bonding out." He used the term in referring to earlier charges "priors". He knew names of persons involved in the alleged instant offenses.

Otherwise, Mr. Jones' presentation was similar to our first meeting, in that there was no disordered thought, no symptoms of depression or mania, no hallucinatory activity, no report of suicide or homicide thought. Memory was significantly better, verbal presentation was significantly better. He was more oriented today to person, place, time and situation.

After interviewing Mr. Jones the second time, I started to have thoughts that he may be feigning memory deficits or cognitive impairment given the difference between the 7/24/2018 interview and the 9/13/2018 interview. I administered the Test of Memory Malingering to Mr. Jones on 9/20/2018. The TOMM provides a systematic method to discriminate between bona fide memory impaired individuals and malingerers. While the TOMM is sensitive to malingering it is insensitive to neurological impairment. According to the TOMM manual, all individuals, including those with neurological impairments, have a remarkably high capacity for storing and retrieving pictures of common everyday objects such as those used in the TOMM. As a result, a low score on the TOMM suggests memory impairment symptoms are false or exaggerated.

In making a decision rather or not an individual is exaggerating memory impairment, scoring lower than chance on any trial of the TOMM indicates the possibility of fabricating. This is an important rule, given that anyone can correctly identify 50% of the items simply by guessing. There are only two choices. So a score of 25 represents a chance level of responding. Any score between the range of 18 to 32 could statistically be considered possible due to guessing. Consequently, scores below 18 are unlikely to occur by chance. These low scores imply that the individual knew some of the pictures were correct but intentionally picked the incorrect item. Mr. Jones produced a score of 13 on the first trial, significantly below chance guessing. On the second trial, most individuals do very well. This is called the retention trial. Any score lower than a 45 on the retention trial should raise concern the individual is not putting forth maximum effort. Mr. Jones once again obtained a total score of 17, significantly below what is likely to occur by chance guessing. The results are indicative of a strong suspicion Mr. Jones is not putting forth maximum effort in responding, and supports consideration of false or exaggerated responses indicative of malingering.

COMPETENCY                    JONES, JEREMIAH                    565703
                              18 CR 625

## CLINICAL IMPRESSION:

317 Mild Intellectual Disability

Mr. Jones was unable to adequately respond to attempts at measuring his current intelligence. School records however indicate Mr. Jones consistently scored within the mild intellectually disabled range on standard tests of intellectual ability. In addition, he scored in the very low range on measures of achievement as well as on measures of adaptive behavior. Given these scores and behaviors beginning within the developmental period, Mr. Jones would qualify for a diagnosis of Intellectual Disability, Mild.

There is no indication Mr. Jones presents symptoms of depression, anxiety, psychosis, mania, or other severe or disabling mental illness. He was diagnosed by Social Security Administration with a Personality Disorder.

304.30 Cannabis Use Disorder

Mr. Jones acknowledged smoking marijuana on a daily basis, warranting the diagnosis of this is now in remission given the controlled environment of the Trumbull County Jail.

Based upon the significant difference in presentation offered by Mr. Jones on two separate occasions as well as the evidence of less than optimal effort on the TOMM, the strong possibility of malingering warrants consideration. Mr. Jones is aware he is in jail, he is aware he is facing years in prison should he be convicted of the alleged instant offenses. He has good motivation to fabricate or exaggerate memory and intellectual impairment. I cannot however ignore the history of limited intellectual functioning evidenced in his school records. It is my opinion he would still qualify for a diagnosis of Mild Intellectual Disability.

## DEFENDANT'S ABILTY TO UNDERSTAND THE NATURE AND OBJECTIVE OF LEGAL PROCEEDINGS:

The first interview on 7/24/2018 with Mr. Jeremiah Jones resulted in little to no information regarding his understanding of legal proceedings. The information he presented on 9/13/2018, however was a much better indication of his abilities. For example on 7/24/2018, Mr. Jones when asked about the alleged offenses stated "they said someone got robbed, I don't know who, I was arrested because of rumors, I don't know." No more information was available about his understanding of the legal process. On 9/13/2018, Mr. Jones was able to state that the charges were supposed to have happened in 2017. He stated the victim in one of the offenses tried to make his name bad because he didn't have a record. He again stated "somebody said they got robbed, but it doesn't add up." He was able to describe circumstances surrounding the offense in a manner supporting his claim he was "not guilty."

7

COMPETENCY                    JONES, JEREMIAH                           565703
                              18 CR 625

## DEFENDANT'S ABILTY TO UNDERSTAND THE NATURE AND OBJECTIVE OF LEGAL PROCEEDINGS (Continued):

When asked about the severity of the alleged offenses, Mr. Jones initially stated he didn't know the severity of the offenses. He stated "I was never in trouble before, I'm new to this." Later on however in the interview he was able to state "I could go to prison, I heard that if I went to trial and was found guilty I could get 14 years." After Mr. Jones stated he was not guilty, I asked him what he meant when he said he was not guilty. He stated "means I didn't do it." When asked what a guilty plea meant, he stated he didn't know. However when presented with the option of entering a guilty plea in a plea deal for a substantially less amount of time in prison he stated "they told my mother they were offering seven years, that's the only thing I heard, people said that's too long, because I have no record. I would take two years if they said that, but that would even be stupid." As a result, the implication is Mr. Jones does know that a guilty plea means he admits a crime and that a plea bargain would mean that he would admit something in exchange for a significantly less punishment. Though Mr. Jones was either unable or unwilling to state what occurred in a trial process, he was able to report that he didn't know why his charge isn't thrown out. He stated "I had an attorney at the municipal court, this case should've got bound over to common pleas then. They should have bonded me out." He was aware the offense started in municipal court.

Mr. Jones when asked about the role of a witness stated "it's what they say, they stand to testify, a lot of people say they would testify for me in court. Nobody saw me do anything." Mr. Jones then went on to talk about potential motives of the accuser.

Mr. Jones then stated that his mother wanted to make some recordings of other statements "to bring it to court for evidence." He initially had stated he didn't know what evidence meant. In discussing the circumstances of the offense he stated "they probably have me on tape walking out of my apartment and walking back in, but I'm allowed to do that." He then went on to state "the only thing they have as evidence is a shirt, but that's because it was thrown out because we were moving, they may have DNA on it but they're my clothes anyway, so the DNA would be on them." In addition, Mr. Jones was aware there was a gun specification to his charges. He stated however "the police never found a gun, I never had a gun, if I had a gun they would have it in court." When I asked Mr. Jones if there was proof of his involvement in the offenses he stated "the lawyer said there was clothes, but we were being evicted, the DNA would be there any way."

Mr. Jones stated that "the prosecutor's got nothing on me, there's no priors nothing." In that sense he was aware the prosecutor was looking to convict him. He also stated that he was willing to be honest with his lawyer because "I've got nothing to hide I didn't do it." Again, an awareness that his attorney was his advocate. He was unsure of the role of a judge.

8

## **DEFENDANT'S PRESENT CAPACITY TO ASSIST IN HIS DEFENSE:**

Based upon my second interview with Mr. Jeremiah Jones on 9/13/2018, it is my opinion Mr. Jones has the ability to communicate with his attorney. Mr. Jones was able to describe circumstances and events surrounding the alleged instant offense as he understood them. He was able to describe what might be available in terms of evidence, witnesses, and witness testimony. He was able to state what might constitute proof in his case. He was able to demonstrate recall for significant events about other individuals involved in the alleged offenses.

Mr. Jones was able to put together an argument supporting his claim in the offenses charged. He has the capacity to recognize how this information as he perceives it is different from information presented by the prosecution. That doesn't mean he is going to be willing to reveal that he understands this to his attorney or to the court, however he was able to demonstrate this capacity during our interview on 9/13/2018.

Mr. Jones also has the capacity to consider legal advice regarding decisions. As an example, he stated he understood that he could get at least 14 years should he be found guilty at trial. He understood that his mother was told that they were offering 7 years, however believed that was too long. He stated "I would take 2 years if they said that but I know I'm not guilty because I didn't do it." In that sense, Mr. Jones is also motivated for a favorable outcome, he hopes to avoid lengthy incarceration. Mr. Jones was in generally good behavioral control during all of our interviews. He was in no manner aggressive, hostile, or threatening. His behavior, at least in terms of his physical behavior was consistent with court expectation.

Mr. Jones does not read, his measured intelligence is within the very low range, his measured academic achievement has been within the very low range. On a test of memory however it was clear Mr. Jones was putting forth minimal effort in a recognition test. His score was indicative of exaggerating memory impairment. This test is sensitive even with persons who demonstrate significant legitimate cognitive disability.

### **OPINION:**

Based upon interview with Mr. Jeremiah Jones, as well as reviewing collateral documents and collateral interviews, it is my opinion Mr. Jones suffers from Intellectual Disability in the mild range. There is no indication however Mr. Jones presents any symptoms of a severe or disabling mental illness. Mr. Jones' Intellectual Disability did not however interfere with his ability to describe his version of the circumstances surrounding the instant offenses. It did not interfere with his ability to generally participate in the legal process. As a result, it is my opinion with reasonable psychological certainty, in spite of his Intellectual Disability, Mild, Mr. Jones has the

## **OPINION (Continued):**

ability to understand the nature and objective of proceedings against him. The following support this opinion:

1. Mr. Jones understands his charges and potential penalty.

2. Mr. Jones understands typical plea options to a criminal defendant.

3. Mr. Jones is able to understand the role of major courtroom personnel.

4. Mr. Jones evidenced an understanding of the adversarial nature of proceedings.

5. Mr. Jones has a basic understanding of the trial process.

6. Mr. Jones has a basic understanding of the plea bargaining process.

It is my opinion with reasonable psychological certainty, Mr. Jeremiah Jones has the present capacity to assist in his defense. The following support this opinion:

1. During our second interview, Mr. Jones responded to questions with coherent and relevant answers, his responses were reality based.

2. The above suggests Mr. Jones has adequate communication skills to communicate with his attorney about the case, and provide meaningful testimony on his own behalf should he be willing.

3. During our interview Mr. Jones' behavior was appropriate to the courtroom setting, he had sufficient self-control.

4. Mr. Jones was able to describe events such as being bound over from the municipal court to the common pleas court, he was able to describe the role of the alleged victim, as well as the motivation the victim may have in bringing the charges. This suggests his capacity to provide information to his attorney to prepare a defense.

5. Mr. Jones demonstrated no psychotic basis for any concerns, he intends to work with his attorney stating he would be honest with his attorney.

6. Mr. Jones expressed his concern to achieve the best outcome possible in his case.

7. In reviewing police reports, Mr. Jones was able to report to an investigating officer that he understood his rights as explained in the Howland Police Department Constitutional Rights and Waiver of Rights form.

10

COMPETENCY                          JONES, JEREMIAH                          565703
                                      18 CR 625

## OPINION (Continued):

8. Review of police reports also indicate that Mr. Jones was able to describe to other parties during visitation phone conversations circumstances and events surrounding the alleged instant offenses which he did not admit to during interview. He did this in a clear and coherent manner on recordings.

In summary, it continues to be my opinion with reasonable psychological certainty, Mr. Jeremiah Jones has the ability to understand the nature and objective of legal proceedings as well as the present capacity to assist in his defense.

Respectfully submitted,

Thomas G. Gazley, Ph.D.
Psychologist

TGG/jr

11